UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                              CASE NO.: 8:09-cv-455-T-23TBM

SKY WAY GLOBAL, LLC, et al.,

    Defendants.
_____/

## **ORDER**

The Commission sues (Doc. 1) Sky Way Global, LLC; Brent C. Kovar; Glenn A. Kovar; James S. Kent; Kenneth Bruce Baker; and Kenneth R. Kramer for "selling unregistered securities and defrauding investors through multiple so-called 'pump-and-dump' schemes in violation of the registration and anti-fraud provisions of the federal securities laws." The Commission seeks a permanent injunction, disgorgement, and a civil penalty.

On September 21, 2009, the Clerk defaulted (Doc. 23) the defendant Sky Way Global. The Commission moves unopposed (Doc. 40) for a default judgment[1] and a permanent injunction. Injunctive relief is appropriate if the Commission establishes

---

[1] In the Commission's request for default judgment against Sky Way Global, the Commission "request[s] [that] the Court impose disgorgement, prejudgment interest, and a civil penalty upon [Sky Way] Global, but reserve jurisdiction to determine the specific amounts upon the Commission's motion, which [the Commission] expect[s] to file within 90 days of the entry of Default Judgment, should the Court grant it." (Doc. 40)

(1) "a prima facie case of previous violations of federal securities laws" and (2) "a reasonable likelihood that the wrong will be repeated." S.E.C. v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004). By virtue of the default, Sky Way Global admits the violations alleged in the complaint. Assessing the probability of the defendant's again violating the securities laws requires consideration of:

> [t]he egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

S.E.C. v. Carriba Air, Inc., 681 F.2d 1318, 1322 (11th Cir. 1982) (quoting S.E.C. v. Blatt, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978)). In this action, the severity and the recurrence of the defendant's misrepresentations, the defendant's scienter (exhibited by the defendant's baseless assertions to potential investors), the defendant's failure to recognize wrongfulness, and the defendant's failure to conform to the law, combine to exceed the threshold for granting relief. Therefore, the circumstances warrant an injunction.

The Commission proposes an obey-the-law injunction that tracks the governing statutes and regulations[2] and that permanently enjoins the defendant (and any agent or

---

[2] The proposed obey-the-law injunction (Doc. 40-2) states:

VIOLATION OF SECTION 5 OF THE SECURITIES ACT
IT IS FURTHER ORDERED AND ADJUDGED that Global and its, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption: (a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; (b) Unless a registration statement is in effect as to a security, carrying
(continued...)

person acting in concert with any agent of the defendant) from violating Sections 5 and 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.

---

[2](...continued)
or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or (c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

. . .

<u>VIOLATION OF SECTION 10(b) OF THE
SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 THEREUNDER</u>

IT IS FURTHER ORDERED AND ADJUDGED that Global and its agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

. . .

<u>VIOLATION OF SECTION 17(a) OF THE SECURITIES ACT OF 1933</u>

IT IS FURTHER ORDERED AND ADJUDGED that Global and its, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

## Discussion

### I. The Problems With An Obey-the-Law Injunction

*1. An Obey-the-Law Injunction Violates Rule 65(d)*

Articulating the standard of specificity that every injunction must satisfy, Rule 65(d), Federal Rules of Civil Procedure, states that "[e]very order granting an injunction . . . must: state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required . . . ." The specificity requirement "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders and . . . avoid[s] the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (finding that because "an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). Thus, every injunction must contain "an operative command capable of 'enforcement.'" Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n, 389 U.S. 64, 73-74 (1967). "A person enjoined by court order should only be required to look within the four corners of the injunction to determine what he must do or refrain from doing." Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1532 n.12 (11th Cir. 1996); see Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (Marcus, J.) (quoting Hughey); Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1411-12 (11th Cir. 1998) (Birch, J.) (citing Hughey and stating that "[t]he district court may not simply order Palm Beach to 'obey the law.'"). Accordingly, "appellate courts will not countenance

injunctions that merely require someone to 'obey the law.'" Hughey, 78 F.3d at 1531 (quoting Payne v. Travenol Lab., Inc., 565 F.2d 895, 897-98 (5th Cir. 1974)); Daniels v. Woodbury County, Iowa, 742 F.2d 1128, 1134 (8th Cir. 1984) ("[A]n injunction which does little or nothing more than order the defendants to obey the law is not specific enough.").

In addition to providing the defendant with "fair and precisely drawn notice of what the injunction actually prohibits," Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994), the specificity requirement of Rule 65(d) serves another vital function. Unless a district court's injunctive order delineates the bounds of compliance, "it is impossible for an appellate tribunal to know precisely what it is reviewing." Hughey, 78 F.3d at 1531 ("'In the absence of specific injunctive relief, informed and intelligent appellate review is greatly complicated, if not made impossible'") (quoting Schmidt, 414 U.S. at 476); see also City of Belle Glade, 178 F.3d at 1200-01 ("A court is incapable of enforcing so broad and vague an injunction"). For example, in City of Belle Glade, three African-American occupants of a housing project located in an unincorporated part of the county alleged discrimination in the City's refusing to annex the housing project. The occupants sought an injunction against the City's discriminating on the basis of race in annexation decisions. Because the injunction "would do no more than instruct the City to 'obey the law,'" the Eleventh Circuit found that "an injunction prohibiting the City from discriminating against [the housing project] in future annexation decisions is not an available remedy to redress the [occupants'] alleged injuries."

In Hughey, the developer of a residential subdivision in Georgia was enjoined from discharging storm water into the waters of the United States "if such discharge would be in violation of the Clean Water Act." Every rainstorm that blew through Gwinnett County caused some "discharge" that was beyond the developer's control. Vacating the injunction, the Eleventh Circuit described the injunction as "incapable of enforcement as an operative command," because the injunction failed to specify how the defendant should prevent discharges and comply with the injunction. "Was [the defendant] supposed to stop the rain from falling? Was [the defendant] to build a retention pond to slow and control discharges? Should [the defendant] have constructed a treatment plant to comply with the requirements of the [Clean Water Act]?" The injunction's lack of specificity resulted in neither the defendant's nor the court's knowing what the injunction required of the defendant, other than the defendant's obeying the law (which the defendant was already obligated to do perforce the governing statutes of the United States, which apply without the aid of an injunction).[3]

---

[3] See also S.E.C. v. Smyth, 420 F.3d 1225, 1233 n.14 (11th Cir. 2005); Posey v. Alternative Home Health Care of Lee County, Inc., 2008 WL 2047935, *3 (M.D. Fla. 2008); E.E.O.C. v. Fla. Institute for Neurologic Rehabilitation, Inc., 2009 WL 3816859 (M.D. Fla. 2009); but c.f Hughey, 78 F.3d at 1533 (stating that, because the plaintiff deserves no relief, the discussion of the proper form of relief, Rule 65(d), and an obey-the-law injunction "may be correct, or it may be incorrect, but it is certainly dicta.") (Carnes, J., concurring in part). In another example, the former Fifth Circuit vacated an injunction prohibiting "discriminating on the basis of color, race, or sex in employment practices or conditions of employment." Payne v. Travenol Labs, Inc., 565 F.2d 895, 897 (5th Cir. 1978). Citing the serious consequences flowing from a violation of an injunction and finding that the injunction was only slightly more specific than the text of Title VII, Payne finds that the injunction is unenforceable.

*2. An Obey-the-Law Injunction Violates the Defendant's Constitutional Rights*

Furthermore, as explained in S.E.C. v. Smyth, 420 F.3d 1225 (11th Cir. 2005) (Tjoflat, J.), an obey-the-law injunction unacceptably conflicts with a defendant's constitutional rights.  Smyth vacates a judgment—entered without an evidentiary hearing—against the defendant for disgorgement and prejudgment interest.  In a footnote,[4] Smyth discusses the enforceability of the permanent injunction[5] entered against the defendant even though the injunction's validity was not before the appellate court (the defendant waived the right to challenge the injunction on appeal).[6]  Smyth

---

[4] 420 F.3d at 1233 n.14.  After the Eleventh Circuit's decision in Smyth, the Commission requested a re-hearing and removal of the footnote from the opinion because the footnote (1) failed to discuss "whether a defendant may waive the specificity requirements in Rule 65(d)"; (2) failed to discuss other decisions finding that "an injunction framed in terms of the applicable legal provisions is not per se unenforceable"; and (3) cites only cases involving private litigants, which cases are "significantly distinguish[able] . . . from the public law nature of the Commission's injunctive actions."  S.E.C. v. Smyth, 420 F.3d 1225 (11th Cir. 2005), petition for rehearing filed, 2005 WL 5277139 (Sept. 23, 2005).  The Commission's request was denied.  See S.E.C. v. Smyth, No. 04-11985-GG (11th Cir. Oct. 7, 2005).

[5] Smyth describes and cites an example of the injunctive provisions entered by the district court:

> The consent decree permanently enjoined Johns and the others from "violating, directly or indirectly," the statutes and regulations cited in the SEC's complaint, see supra note 5. Paragraph I of the injunctive portions of the decree is illustrative. It states, in full:
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant Johns ... be and hereby [is] permanently enjoined and restrained from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ..., [15 U.S.C. 77q(a),] by, through the use of any means or instruments of transportation or communication in interstate commerce or the use of the mails:
> 1. employing any device, scheme or artifice to defraud;
> 2. obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
> 3. engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,
> in the offer or sale of any security.

420 F.3d at 1229 n.8.

[6] Under the terms of the "consent decree" entered by the district court, the defendant stipulated to a waiver of the defendant's right to appeal the injunction. However, because the district court retained jurisdiction to enforce, modify, or revoke the injunction, the Eleventh Circuit offered guidance on the

(continued...)

finds that the injunction is "a quintessential 'obey-the-law' injunction," which "[t]his circuit has held repeatedly [is] unenforceable."

As an initial matter, Smyth explains that Rule 65(d), Federal Rules of Civil Procedure, is "no mere technicality" but requires an injunction "framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." More importantly, Smyth describes the serious constitutional conflict inherent in a court's enforcing an obey-the-law injunction. After entry of such an injunction, the Commission could return to the court at any time and seek through a basic contempt proceeding to enforce the law based on an alleged violation by the defendant—no matter how distinct the alleged violation (in nature, time, or location) from the violation underlying the injunction. Thus, an obey-the-law injunction permits the Commission to achieve through the mere filing of a motion a result that, absent the injunction, the Commission could achieve only through a full-scale prosecution. The contempt proceeding (while perhaps increasing the ease and efficiency of the government's enforcement of the securities laws) impermissibly bypasses not only the Federal Rules of Civil Procedure but the defendant's rights under the Due Process Clause and Seventh Amendment.[7]

As Smyth notes:

> [w]hether the court would delay the [contempt] hearing to afford [the defendant] his rights under the Rules, including discovery, and a jury

---

[6](...continued)
injunction's enforceability. 420 F.3d at 1233 n.14.

[7] See also Bazerman v. Feaver, 293 F. App'x 635, 639 n.11 (11th Cir. 2008) (Tjoflat, J., concurring in part and dissenting in part).

> trial of the issues the court would ordinarily submit to a jury were the SEC to sue [the defendant] in a separate action rather than seek enforcement of the injunction are issues a district court should consider in deciding whether to sign an obey-the-law consent decree such as the one the SEC drafted in this case.

420 F.3d at 1233 n.14. For example, consider the defendant who, in response to an allegation of selling an unregistered security, consents to an obey-the-law injunction by a federal court in Florida. If the defendant moves to California and ten years later allegedly engages in insider trading, the Commission could seek from the Florida court an order to show cause, which compels the defendant to appear in Florida and explain why the Florida court should not fine or imprison the defendant for allegedly violating the injunction by activity in California. Although the Due Process Clause otherwise would prohibit a prosecution in Florida based on the California violation, the Commission would argue that the defendant's due process rights are unaffected by a contempt hearing pursuant to the injunction (because the defendant in stipulating to the injunction "voluntarily" waives objections to personal jurisdiction).[8] Furthermore, in the contempt proceeding, the defendant enjoys neither the right to a jury trial nor the benefit of a full measure of pleadings, motions, discovery, and the like to obtain information as to the alleged violation.[9] The defendant lacks both the rights and benefits afforded a criminal

---

[8] The Commission assumes (1) that the defendant may, as a condition of settling with the Commission, forever waive personal jurisdiction and (2) that the court retains in perpetuity jurisdiction to enforce the injunction. See David M. Weiss, Reexamining the SEC's Use of Obey-the-Law Injunctions, 7 U.C. DAVIS BUS. L.J. 6 (2006) (arguing Smyth's concern with procedural due process is not compelling because "SEC injunctions almost uniformly stipulate that a defendant waive the procedural due process right to personal jurisdiction for future securities law violations.").

[9] In a criminal contempt proceeding (characterized as one in which the sanctions are punitive in nature) the court must provide "the presumption of innocence, the privilege against self-incrimination, [and] the right to counsel . . . ." to the contemnor before imposing sanctions. In the most serious cases—in
(continued...)

- 9 -

defendant (1) even though the charge that the defendant violated the injunction is, in essence, a charge that the defendant violated the securities laws, on the basis of which charge the defendant could be criminally prosecuted and punished pursuant to the securities laws;[10] (2) even though the facts and circumstances underlying the new violation are completely different from the facts and circumstances underlying the injunction; and (3) even though, in a criminal contempt proceeding, "the [c]ourt has a relatively unlimited power to punish" the defendant.[11]

---

[9](...continued) which the penalty exceeds six months' imprisonment—the defendant has a right to a jury trial. 180 F.3d at 1267 (citing Young v. United States ex rel. Vuitton et Fils, S.A.., 481 U.S. 787, 798-99 (1987)); see Baldwin v. New York, 399 U.S. 66, 73-74 (1970); Musidor, B.V. v. Great Am. Screen, 658 F.2d 60, 65-66 (2nd Cir. 1981); FED. R. CRIM. P. 42; compare Frank v. United States, 395 U.S. 147, 148-49 (1969) (upholding a denial of the defendant's right to a jury trial in a criminal contempt proceeding in which the defendant received a suspended sentence and three years' probation); see also 395 U.S. at 149 (finding that "in prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense."). However, if a criminal contempt charge arises from a "contempt committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States," the defendant has no right to a jury trial. 18 U.S.C. § 3691. A contempt proceeding is "civil in nature[] if its purpose [i]s remedial and [i]s intended to coerce the defendant into doing what he was supposed to do." United States v. Hilburn, 625 F.2d 1177, 1179 n.1 (5th Cir. 1980). "Neither a jury trial nor proof beyond a reasonable doubt is required" in a civil contempt proceeding. United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).

[10] See, e.g., United States v. Custer Channel Wing Corp., 247 F. Supp. 481, 490-95 (D. Md. 1965), aff'd 376 F.2d 675, cert. denied, 389 U.S. 850 (adopting the requirement that all that is necessary "to constitute a wilful violation of § 5 of the Securities Act is intentional activity in violation of § 5 with knowledge of all the factors constituting the violation, but not proof of evil purpose" and finding that "[t]he power to punish for violation of an injunction enjoining transgression of § 5 of the Act should not be less than power to enforce § 5 of the Act by criminal sanctions.").

[11] Channel Wing, 247 F. Supp. at 496; 18 U.S.C. §§ 401, 402, 3691; see supra note 9; see also Weiss, supra note 8 (stating that "civil contempt proceedings resulting from SEC obey-the-law injunctions are very rare."). As Weiss notes:

> [A]lthough both criminal and civil contempt sanctions are employed to enforce SEC obey-the-law injunctions, in most circumstances the Commission pursues criminal rather than civil contempt. Besides the fact that criminal sanctions are more punitive and burdensome, the SEC's preference for criminal sanctions is attributable to the fact that obey-the-law injunctions are usually crafted in negative form, prohibiting the defendant from engaging in specified kinds of conduct. When

(continued...)

*3. An Obey-the-Law Injunction Conflicts with the Principle of Separation of Powers*

Additionally, an obey-the-law injunction conflicts with the separation of powers principle. "If the law on which the injunction is based is legislatively created, then the legislature is likely also to have created rules regarding the means by which the law should be enforced and the appropriate sanction for a violation of the law." Chandler v. James, 180 F.3d 1254, 1271 (11th Cir. 1995) (Tjoflat, J., specially concurring). An obey-the-law injunction creates an "individualized criminal or civil law" that impermissibly modifies the existing law by substituting (1) a contempt hearing for the statutorily provided procedure and (2) contempt sanctions for the statutorily provided remedy. For example, 15 U.S.C. § 77t prescribes a three-tiered system of civil monetary penalties for a violation of the Securities Act and permits the Commission to transmit any evidence to the Attorney General for criminal proceedings, if warranted. Additionally, Section 77t states, in relevant part, that "[w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [Securities Act] . . . the Commission may . . . bring an action . . . to enjoin such acts or practices . . . ." A plain reading of Section 77t reveals that Congress authorized an injunction against an "act or practice" that a person "is engaged

---

[11](...continued)
  a defendant violates a decree, a civil contempt sanction is often inappropriate because the prohibited action has already been consummated, and neither a compensatory nor a coercive contempt order will provide a suitable remedy.

See Weiss, supra note 8, n.20. Nonetheless, Weiss asserts that Smyth's concerns as to the specificity requirement of Rule 65(d), the Due Process Clause, and the Seventh Amendment are "not compelling." Because the right to a jury trial in a contempt proceeding "is not absolute," Weiss argues that no violation of the Seventh Amendment arises from an obey-the-law injunction. However, Weiss's logic illustrates the precise problem with an obey-the-law injunction. Because generally no right to a jury trial exists in a contempt proceeding, an obey-the-law injunction forever deprives a defendant of a broader right that the defendant possesses, absent the injunction, in a standard prosecution.

in or [is] about to engage in" and that violates the Securities Act. Authorization to enjoin a certain, identifiable, and demonstrably imminent "act or practice" differs markedly from authorization to enjoin any act or practice and all possible acts or practices that violate the law, wherever and whenever the act or practice occurs. Nevertheless, by virtue of the Commission's proposed enforcement-by-motion mechanism, the Commission (vested with only civil enforcement authority)[12] procures the ability to criminally punish the defendant in perpetuity (1) without the requisite finding under Rule 65(d) as to each act or practice, (2) without satisfying the other concomitant evidentiary and procedural requirements of a standard criminal prosecution, and (3) without involving the Attorney General. See Chandler, 180 F.3d at 1272 & n.14 (describing enforcement of the criminal law as "a matter for the executive branch, not the judicial branch" and noting that "[t]his is one of the reasons for the equitable principle that equity will not enjoin the commission of a crime"). At the judge's discretion, the defendant's punishment may include either a fine or imprisonment (or both).[13] The Commission accomplishes all of this through an obey-the-law injunction even though the statutory scheme contemplates (1) the enjoining of a certain, identifiable, and demonstrably imminent act or practice; (2) the Attorney General's prosecuting criminal violations of the securities law; and

---

[12] In Section 77t, Congress explicitly delegates the power to bring criminal charges to the Attorney General. The argument that Congress also grants the Commission criminal enforcement powers (because the power to obtain injunctive relief necessarily includes the authority to seek criminal contempt sanctions) is unavailing in this context because an obey-the-law injunction (which is not contemplated by the statute) effectively transforms the Commission's discrete power to procure criminal punishment for an act or practice in violation of an injunction into a broad, unlimited power to procure criminal punishment (in perpetuity) for any act or practice in violation of the statute.

[13] See 18 U.S.C. § 401-402.

(3) precisely delineated tiers of a civil penalty, which tiers correlate to the facts and circumstances underlying each violation.

### *4. An Obey-the-Law Injunction is Unenforceable*

An obey-the-law injunction is both unenforceable and ineffective. Because an obey-the-law injunction is not susceptible to enforcement through coercive sanctions, such an injunction completely lacks deterrent power. See Chandler, 180 F.3d at 1266-68 (explaining that coercive sanctions "are intended to coerce the contemnor into doing an act that he is already required to do, but refuses to perform."). In other words, the court lacks the ability to "pressure[] the defendant into performing an action that the plaintiff desires to have performed," and the defendant lacks the ability to "purge his contempt," because, as soon as the defendant violates the law, "the act to be prevented by the injunction has already occurred."

> To make the point clearer, try to imagine a court attempting to enter coercive sanctions in [a] situation [in which] . . . [t]he court has enjoined [an] employer not to harass [an] employee. The employer nevertheless does so [through the employer's CEO], and, after a show cause hearing, is held in contempt. The court fines the employer $100 per day until ... well, until what? Presumably, until the court is persuaded that the harassing CEO will not repeat his misbehavior. Thus, after three days of fines, the CEO contacts the judge and promises that he will never again sexually harass the employee. The court thinks the CEO was shifting his eyes a bit much when he made the promise, however, and therefore allows the fines to continue accumulating. After a week of fines, the CEO makes the same promise, but this time on his knees and with his hands clearly visible so that the court can see that the CEO's fingers are not crossed. The court is still unpersuaded, and continues allowing the fines to accrue. This exercise would presumably continue until such time as the court, for whatever reason, decided that the CEO had learned his lesson.

180 F.3d at 1269.

A securities fraud recidivist vividly illustrates this point.[14] Consider the case of Roc G. Hatfield, the executive officer of Centuri Mining Corp., a Florida corporation that purportedly operated a gold mining business in Colombia.[15] Hatfield allegedly sold unregistered shares of Centuri Mining and misrepresented the status of Centuri Mining's operations, the value of Centuri Mining's gold reserves, and the safety of the investment. After Hatfield and the Commission settled the Commission's civil enforcement action against Hatfield, a court enjoined Hatfield from violating the securities law. A few years later, Hatfield became the CEO of a brokerage firm and began selling securities. Hatfield again (despite the obey-the-law injunction) engaged in numerous misrepresentations in order to sell unregistered securities to unwitting investors. The Commission initiated a civil enforcement action against Hatfield and Hatfield consented to another obey-the-law injunction.[16] Undeterred, Hatfield concocted another fraudulent scheme to sell securities, which scheme resulted in yet another obey-the-law injunction. Nonetheless, after three obey-the-law injunctions and three contempt hearings, Hatfield still refused to cooperate. Accordingly, the Commission concluded that a fourth obey-the-law injunction was necessary to convince Hatfield to abide by the securities laws.[17]

---

[14] See Jayne W. Barnard, Securities Fraud, Recidivism, and Deterrence, 113 PENN. ST. L. REV. 189, 193-98, 219-22 (2008).

[15] S.E.C. v. Centuri Mining Corp., No. 8:88-cv-1741-WJC (M.D. Fla. 1989); S.E.C. v. Centuri Mining Corp., Litig. Rel. 12195 (August 3, 1989).

[16] S.E.C. v. Marada Global Corp., No. 8:94-cv-1504-RAL (M.D. Fla. 2002); S.E.C. v. Marada Global Corp., Litig. Rel. 752 (March 27, 2002).

[17] See Barnard, supra note 14, pp. 196-97; Jane Meihardt, Pre-construction Firm Owner's Past Concerns Investors, TAMPA BAY BUS. J., June 9, 2006.

Hatfield and other securities recidivists[18] aptly demonstrate that the Commission's "current practice of privileging hope (in the form of an obey-the-law injunction) over experience (the many cases in which fraud defendants recidivate)"[19] neither deters violators nor protects investors.  After all, how meaningful is a civil injunctive order to a defendant who willingly breaks the criminal law?  Why would a person who fails to "respond to imprisonment or the threat of imprisonment" respond to "something as diaphanous as an obey-the-law injunction"?[20]  Accordingly, the pursuit of a securities recidivist is rightly the business of the Attorney General and the grand jury, as Congress intended, and not the Commission or the district judge.[21]

---

[18] See Barnard, supra note 14, at 193-98, 220-22; S.E.C. v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004); S.E.C. v. Martino, 255 F. Supp. 2d 268, 270-71 (S.D.N.Y. 2003), remanded by S.E.C. v. Martino, 94 F. App'x 871 (2nd Cir. 2004); S.E.C. v. Custable, 1995 WL 117935 (N.D. Ill. 1995); S.E.C. v. Sharp, S.E.C. Litig. Rel. 10334 (April 6, 1984).

[19] Jayne W. Barnard, Evolutionary Enforcement at the Securities and Exchange Commission 24 (William & Mary Law Sch. Research Paper No. 09-19), available at http://ssrn.com/abstract=1520697.

[20] See Barnard, supra note 19, at 22.

[21] See 15 U.S.C. § 77t(b); Barnard, supra note 14, at 221-22 (commenting that "the civil sanctions available to the SEC—inconveniences, really—are unlikely to deter committed recidivists."). According to one commentator:

> [I]t is understandable that the SEC husbands these cases for itself rather than referring them to the Department of Justice. This reluctance may be due to territorialism and a sense that the U.S. Attorneys' offices are often not very good at prosecuting certain types of securities frauds. There also may be problems with meeting the beyond-a-reasonable-doubt standard necessary to secure a criminal conviction. Internet frauds are particularly difficult to prosecute: the detailed tracing of communications through multiple servers and the frequent involvement of offshore co-conspirators, whose testimony cannot be compelled, complicate these cases. And, recently, the FBI and federal prosecutors have been directed to focus on terrorism and drugs, not fraud.  Thus, today, these agencies simply lack the resources to pursue all but the biggest fish in the securities fraud pool.
>
> Still, where the likelihood of recidivism is high, the SEC should recognize that something more than repeated civil sanctions may be required. In the case of documented recidivism, criminal prosecution will almost always be appropriate. Most of these defendants belong in jail.

See Barnard, supra note 14, at 222.

## II. The Commission's Argument For a Permanent, Obey-the-Law Injunction[22]

In arguing for a permanent, obey-the-law injunction, the Commission asserts that the law expressly excepts an S.E.C. enforcement action from the general prohibition against an obey-the-law injunction. In support of this position, the Commission cites S.E.C. v. Carriba Air, Inc., 681 F.2d 1318 (11th Cir. 1982) (Clark, J.); S.E.C. v. Ginsburg, 362 F.3d 1292 (11th Cir. 2004) (Carnes, J.); C.F.T.C. v. Sidoti, 178 F.3d 1132 (11th Cir. 1999) (Black, J.); and S.E.C. v. Solow, 554 F. Supp. 2d 1356 (S.D. Fla. 2008) (Middlebrooks, J.). The seminal case, Carriba Air, upheld a preliminary injunction that broadly enjoined the defendants from any future violation of the securities laws. The injunction closely tracked the language of the statute and prohibited the defendants from violating each section. Citing an eighteenth century exception for public nuisance crimes, Carriba Air claimed that the maxim "equity will not enjoin a crime" is not "an ironclad rule." Carriba Air likened a violation of the securities laws to a public nuisance and found that in 15 U.S.C. § 77t "Congress specifically authorized an injunction to issue to prohibit the violation of the securities laws." However, as stated earlier, a plain reading of the statute reveals that Congress authorized an injunction against an "act or practice" that a person "is engaged in or [is] about to engage in," that is, a particular and identifiable act, that violates the securities law and not any act or practice and every act or practice, committed whenever and wherever, that violates the securities law. Furthermore, neither Carriba Air nor any case relying on Carriba Air either sufficiently supports or adequately explains the precise bounds of Carriba Air's "public nuisance

---

[22] The Commission is not the only federal agency to seek an injunction of this kind. See, e.g., E.E.O.C. v. Fla. Institute for Neurologic Rehabilitation, Inc., 2009 WL 3816859 (M.D. Fla. 2009) (denying the E.E.O.C.'s request for approval of a proposed consent decree that contained an obey-the-law provision).

- 16 -

exception" (which serves as the basis for the S.E.C.'s alleged "express exception") to the equitable bar against a court's enjoining a crime. May a court permanently enjoin a person's committing any and every conceivable public nuisance, whenever and wherever the nuisance-like activity occurs? The common law's prohibition against enjoining a crime may not stand "ironclad," but neither is the prohibition pitifully gelatinous.

Additionally, neither Ginsberg nor Sidoti persuasively supports the Commission's argument. Ginsberg reversed the district court's denial of a permanent injunction against future violation of the Exchange Act. Although the district court applied the correct legal standard, Ginsberg re-evaluated the Carriba Air factors,[23] found a "reasonable likelihood" of a future violation by the defendant, and held that the district court erred in refusing to enter the injunction. Notably, Ginsberg contained no discussion of, and expressed no opinion on, the enforceability of an obey-the-law injunction in an S.E.C. prosecution. Similarly, Sidoti lacked any discussion of the enforceability of an obey-the-law injunction in an S.E.C. prosecution—Sidoti merely cited to Carriba Air and upheld the district court's enjoining the defendants from "further violations of the [Commodity Exchange] Act." In this respect, Sidoti exemplifies a troublesome trend: even if the enforceability issue is raised, scant analysis accompanies a decision either granting or upholding an obey-the-law injunction. See, e.g., S.E.C. v. United Energy Partners, Inc., 88 F. App'x 744, 746 (5th Cir. 2004); S.E.C. v. Keller Corp., 323 F.2d 397, 402-03 (7th Cir. 1963); Hillsborough Inv. Corp. v. S.E.C., 276 F.2d 665, 667-78 (1st Cir. 1960); S.E.C. v. Poirier, 140 F. Supp. 2d 1033, 1047,

---

[23] 681 F.2d at 1322.

1049 (D. Ariz. 2001); compare S.E.C. v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1102-03 (2d Cir. 1972) (finding that "[t]here can be no abuse of discretion in framing an injunction in terms of the specific statutory provision which the court concludes has been violated."); S.E.C. v. Zwick, 2007 WL 831812, *19 (S.D.N.Y. 2007) (finding that a proposed obey-the-law injunction is proper because Manor Nursing authorizes such an injunction); but see Solow, 554 F. Supp. 2d 1356 (collecting cases and finding that an injunction that tracks the statutory language and "does no more than require [the defendant] to obey the federal securities laws . . . is permissible and is neither an impermissible obey-the-law injunction nor an overly broad and vague injunction.").

Smyth explains the inherently problematic result of accepting an interpretation of Section 77t that permits an obey-the-law injunction, and Smyth provides the most persuasive and immediate precedent against the enforceability of an obey-the-law injunction in an S.E.C. prosecution. In this instance, the Commission's proposed obey-the-law injunction, which seeks to enjoin the defendant's violating Sections 5 and 17(a) of the Securities Act, Section 10(b) of the Securities Exchange Act, and Rule 10b-5, purports to establish a pervasive prohibition against inadequately specified conduct and fails to satisfy the requirement that "'an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'" Hughey, 78 F.3d at 1531 (quoting 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2955 (1995)). As proposed, the obey-the-law injunction permits the Commission to assert against the defendant (or any agent, servant, employee, attorney, or "person in active concert" with any agent, servant, employee, or attorney of the defendant) any future prosecution under the pertinent securities laws by the simple

expedient of filing a motion to enforce the injunction, thereby circumventing important procedural, jurisdictional, and constitutional requirements.

Although the Commission's widespread practice of procuring an obey-the-law injunction as a component of resolving litigation is legally flawed and practically mischievous, the practice is especially flawed and mischievous in this action. First, three of the five individual defendants, four of whom still defend against the claims of the Commission, appear in defense pro se. The corporate defendant, Sky Way Global, defaults without any evidence of representation by counsel. Neither a defaulting party nor an unrepresented party is normally presumed capable of effecting the knowing, voluntary, and intelligent waiver of valuable constitutional and other substantive and procedural rights, especially rights outside the litigation in which the default occurs (of course, a defaulting party forbears certain procedural rights within the particular case). In other words, the Commission benefits in this instance from no stipulation, settlement agreement, or other subscribed memorialization, or even a procedural history, arrived at with the advice of counsel, on which to premise a claimed consensual relinquishment of the defendants' many constitutional and other objections both to an obey-the-law injunction and to that injunction's enforcement, based upon events whenever and wherever occurring and of whatever nature consisting. Second, the Commission proposes an obey-the-law injunction that by force of Rule 65(d)(2) binds not only the corporate entity, Sky Way Global, but also Sky Way Global's "officers, agents, servants, employees, and attorneys; and other persons in active concert" upon receiving "actual notice" of the injunction. Each of the four individuals defending against this action is within the scope of the obey-the-law injunction as fortified by Rule 65(d)(2), which creates an onerous circumstance in which an actively litigating defendant is subject to

the sanctions visited upon a defaulting corporate defendant even though the individual defendant persists in his defense.

Conclusion

The Commission's motion (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**. The defendant Sky Way Global shall pay a civil penalty and disgorge with prejudgment interest any ill-gotten gain. The court retains jurisdiction to enter a money judgment against Sky Way Global for an amount certain, consequent upon a motion by the Commission. To the extent that the Commission seeks entry of a permanent, obey-the-law injunction, the Commission's motion (Doc. 40) is **DENIED**. No later than **May 17, 2010**, the Commission may propose a permanent injunction that, consistent with the requirements of this order, complies with 15 U.S.C. § 77t, which states that "[w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of [the Securities Act] or of any rule or regulation prescribed under authority thereof . . . the Commission may, in its discretion, . . . [seek] to enjoin such acts or practices."

ORDERED in Tampa, Florida, on April 22, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE