UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                          CASE NO.: 8:09-cv-455-T-23TBM

SKY WAY GLOBAL, LLC,
BRENT C. KOVAR, GLENN A. KOVAR,
JAMES S. KENT, KENNETH BRUCE
BAKER, and KENNETH R. KRAMER,

    Defendants.
_____/

**ORDER**

    The Commission sues (Doc. 1) and alleges that the defendant Kenneth R. Kramer violated the broker-dealer registration requirement under Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o ("Section 15(a)(1)"). The Commission and Kramer each move (Docs. 89, 90, 93, 94) for summary judgment. On August 13, 2010, the Commission moved (Doc. 91) to strike the expert report of Leonard Bloom submitted by Kramer in support of summary judgment. Magistrate Judge Thomas B. McCoun, III, denied (Doc. 116) the motion but ordered Kramer to supplement the report, and Kramer complied (Doc. 118). The Commission moves (Doc. 126) to exclude Bloom's opinion based on Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and Kramer responds (Doc. 144) in opposition. Additionally, Kramer moves (Doc. 134) to amend the pre-trial order. On November 4, 2010, the parties argued in support of each party's motions. At the conclusion of the hearing, the parties were directed to depose the

defendant James Kent, whose sworn declaration the Commission submitted as evidence against Kramer.  The parties submit (Doc. 157) Kent's November 10, 2010, deposition (Doc. 157-1).

## Discussion

### *1. Summary Judgment*

A claim is susceptible to summary judgment if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  The Commission argues that the undisputed facts show that Kramer acted as a broker.  In response, Kramer asserts that no violation occurred, because Kramer's "limited actions and activities did not require him to be registered as a [b]roker-dealer."

Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act") states (in relevant part) that:

> It shall be unlawful for any broker or dealer which is . . . a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o(a)(1).  The Exchange Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4).  The existence of one or more factors, such as whether a person (1) "'actively solicited investors,'" (2) "'advised investors as to the merits of an

investment,'" (3) "'acted with a 'certain regularity of participation in securities transactions,''" (4) "'received commissions or transaction-based re[m]u[n]eration,'" (5) worked as an employee of the issuer, and (6) sold securities of other issuers, may support the conclusion that a person acted as a broker. Securities & Exchange Comm'n v. Corporate Relations Grp., Inc., 2003 WL 25570113, *17 (M.D. Fla. 2003) (quoting In re Kemprowski & the Cambridge Consulting Co., Exchange Act Rel. No. 34-35058, 1994 WL 684628, *2 (Dec. 8, 1994)) (finding a violation of Section 15(a)(1) based on the defendants' repeatedly delivering a sales pitch to potential investors "directly and through registered representatives," facilitating stock sales, and receiving compensation based on sales); Securities & Exchange Comm'n v. George, 426 F.3d 786, 797 (6th Cir. 2005); Securities & Exchange Comm'n v. Deyon, 977 F. Supp. 510 (D. Me. 1997).  However, Cornhusker Energy Lexington, LLC v. Prospect Street Ventures, 2006 WL 2620985 (D. Neb. 2006), states that:

> In a series of no-action letters, the staff of the Securities and Exchange commission ("SEC") has indicated that in certain limited circumstances, a person or entity may perform a narrow scope of activities without triggering b[r]oker/dealer registration requirements. See, e.g., Mike Bantuveris, 1975 SEC No-act. LEXIS 2158 (Oct. 23, 1975) (referring to "merely act[ing] as a finder in bringing together the parties to transactions involving the purchase and sale of securities"). A finder, however, will be performing the functions of a broker-dealer, triggering registration requirements, if activities include: analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations, discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities. See, e.g., John Woods Loofbourrow Associates, Inc., 2006 SEC No-Act. LEXIS 523 (June 29, 2006); Globaltec Solutions, LLP, and CommandTRADE, LP, 2005 SEC No-Act. LEXIS 868 (Dec. 28, 2005); Dominion Resources, Inc., 2000 SEC No-act. Lexis 304 at *2 (Mar. 7, 2000) (reversing earlier position); John Wirthlin, 1999 SEC

> No-Act. LEXIS 83 (Jan 19, 1999); Davenport Management Inc., 1993 SEC No-Act. LEXIS 624 at *13 (Apr. 13, 1993); and C & Woods Portfolio Management, 1989 SEC No-Act. LEXIS 1286 at *3 (July 20, 1989).

2006 WL 2620985 at *6 (stating that "transaction-based compensation[] or commissions are one of the hallmarks of being a broker-dealer.").

In this instance, the parties present both conflicting evidence as to material factual issues and certain, persuasive grounds for doubting the admissibility of at least some of the proffered evidence. Both a diligent review of the supporting material and the parties' arguments at the November 4, 2010, hearing reveals that, as defined for the purpose of resolving a summary judgment motion, a "genuine issue of material fact" as to Kramer's conduct in the purchase and sale of securities prevents summary judgment for either party.

*2. Kramer's Request to Amend the Pre-trial Order*

On April 19, 2010, Kramer moved (Doc. 47) to compel the Commission's deposition under Rule 30(b)(6), Federal Rules of Civil Procedure. Kramer's notice requested that the Commission designate one or more persons to testify on the Commission's behalf as to:

> The specific facts, information, documents, and/or other evidence specifically relied upon by the [Commission], which support a specific cause of action and claim(s) for relief asserted by the [Commission], specifically against Mr. Kramer . . . which asserts, inter alia, that Mr. Kramer violated the Broker Dealer Registration provisions of the Exchange Act.

The Commission opposed the motion and argued (1) that the information Kramer sought in a Rule 30(b)(6) deposition qualified as protected attorney work product,

- 4 -

(2) that Kramer's request for a Rule 30(b)(6) deposition amounted to "an attempt to depose opposing counsel," and (3) that Kramer could learn by other means the facts underlying the Commission's allegations. Magistrate Judge McCoun denied Kramer's motion. Kramer objected (Doc. 69) to the order (Doc. 66) and asserted that the order "was both clearly erroneous and contrary to law" based on Rule 30(b)(6), Federal Rules of Civil Procedure, and applicable case law. The Commission responded (Doc. 79) in opposition and argued (1) that "the Commission has already produced all the documents it has . . . [,] the Commission has no independent knowledge of these documents, and . . . the only remaining knowledge as to the basis of the Commission's claim against Kramer is the importance the Commission gives to each document and other evidence" and (2) that "[n]either undersigned counsel nor the Commission counsel assigned to investigate this matter will appear as witnesses at trial." Due to inadvertence (and the fact that the objection was not docketed as a pending motion) Kramer never received a ruling on his objection. Subsequently, the Commission identified Torres as a witness.

In his motion to amend the pre-trial order, Kramer (1) objects to the Commission's calling Torres as a witness because the Commission failed to identify Torres as a witness; (2) objects to consideration of the declarations of Torres (Docs. 92-25, 110-12) and Panahi (Doc. 97-1)[1] in connection with the pending summary judgment motions,

---

[1] Panahi was the "primary staff attorney responsible for the investigation regarding Skyway." (Doc. 97-1)  In his declaration, Panahi describes the character of SkyWay's common stock, which "qualifies as a '[p]enny [s]tock'" and "was registered with the Commission pursuant to Section 12(g) of the . . . Exchange Act . . . and quoted on the OTC Electronic Bulletin Board under the symbol "SWTC." Torres is "a certified public accountant" and "a staff accountant" with the Commission. Torres declares that he reviewed certain documents produced to the Commission, including documents describing transactions in
(continued...)

because the Commission fails to demonstrate that either Torres's or Panahi's testimony is admissible at trial; and (3) identifies Kramer's unresolved objection to Magistrate Judge McCoun's order (Doc. 66) denying Kramer's motion to compel a Rule 30(b)(6) deposition by the Commission.

Under Rule 16(e), Federal Rules of Civil Procedure, "[t]he court may modify [a] [pre-trial] order issued after a final pre[-]trial conference only to prevent manifest injustice."  Because Kramer received no ruling on his objection and to the extent that Kramer requests to amend the pre-trial order to preserve his objection, the request accords with the manifest interest of justice.  Accordingly, an amendment to the pre-trial order shall (1) note Kramer's objection to the Commission's calling Torres as a witness and (2) identify Kramer's objection to Magistrate Judge McCoun's order (Doc. 66) as a pending matter.

*3. The Commission's Daubert Motion to Exclude Bloom's Expert Testimony*

In moving to exclude under Daubert, the Commission argues (1) that Bloom's opinion contains inadmissible legal conclusions, (2) that Bloom fails to either articulate or apply a methodology, (3) that Bloom's opinion ignores relevant evidence, and (4) that Bloom lacks the "requisite training, experience, or education to qualify as an expert in the area of broker-dealer conduct."  In response, Kramer argues (1) that Bloom's opinion is admissible and "based upon industry practice and Mr. Bloom's extensive expertise in advising clients on these precise matters for over [thirty] years," (2) that

---

[1](...continued)
Kramer's Scottrade account, and that based on Torres' review Torres concludes that Kramer "realized about $731,000 from trading in SkyWay stock and about $201,000 in cash . . . for a total gain of about $932,000."  (Doc. 92-25).

Bloom's opinion rests on a proper foundation, (3) that Bloom bases his opinion on reliable evidence, and (4) that Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 194 (3rd Cir. 2006), supports the admissibility of Bloom's opinion.

Rule 702, Federal Rules of Evidence, permits the admission of expert testimony if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)).  Thus, the proponent of expert testimony must "demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact."  402 F.3d at 1107.  "Although testifying experts may not offer legal conclusions, Federal Rule of Evidence 704(a) provides, in relevant part, that 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'"  402 F.3d at 1112 n.8; see 1-13 WEINSTEIN'S FEDERAL EVIDENCE MANUAL § 13.04 (stating, for example, that "an expert's testimony that a company's financial filings were 'reasonable,' although arguably stating a legal conclusion, was not worded in the statutory language and would have been useful to a jury trying to resolve complex questions under the securities laws.").

In Berckeley, the defendant presented the opinion of an expert (a former lawyer for the Securities and Exchange Commission) "reputed to have experience with offshore transactions and the availability of exemptions in connection with those transactions . . . ." Based on the defendant's conduct, the expert offered several legal conclusions. Affirming the district court's decision to admit the expert's opinion, Berckeley explains that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicated legal duties." Berckeley finds that, to the extent that the expert offered an opinion on the customs and practices in the securities industry at the time, the opinion could aid the trier of fact in determining whether the defendant possessed the requisite scienter.

In this action, Kramer offers an opinion (Docs. 90-7, 118) by Bloom that evaluates Kramer's conduct and states (1) that "there is no evidence that [Kramer] was in the business of effecting transactions in SkyWay securities for the accounts of others" and (2) that Kramer's activity "does not require registration as a 'broker' under the securities laws." Bloom's opinion is based on (1) the language of Sections 3 and 15 of the Exchange Act; (2) "applicable case law" including S.E.C. v. Corporate Relations Grp., 2003 WL 25570113 (M.D. Fla. 2003); (3) a review of the Commission's "No Action" letters; (4) the pleadings and orders in this action, (5) depositions and other exhibits submitted in support of summary judgment, and (6) Bloom's experience as an attorney for the Commission and "extensive experience in matters related to the . . . [Commission], [s]tate investigations and enforcement actions, and broker/dealer

regulations." Bloom undoubtedly possesses the qualifications necessary to testify on the matter his opinion addresses. Even though Bloom's opinion embraces an ultimate issue, to the extent that Bloom's opinion derives from a reliable basis, offers an insight into the custom and practice of broker registration in the securities industry, and assists the trier of fact, Bloom's opinion is admissible.

### *4. Kent's Declaration and Deposition*

In support of summary judgment and in response to Kramer's motion for summary judgment, the Commission submits (Docs. 92-26, 110-8) the August 13, 2010, "Declaration of Defendant James Kent." The declaration states, in relevant part, that Kent possesses "personal knowledge of the matters set forth" in the declaration and (1) that "SkyWay paid Kramer and a network of his associates commissions for their efforts in inducing individuals to invest in SkyWay stock," (2) that Kramer faxed to either Kent or Baker "the sales and commission statement information . . . regarding the sale of SkyWay stock that [Kramer] and his network of associates effected through their sales and marketing efforts," and (3) that Kent arranged for the commission payment (in the form of SkyWay shares) to Kramer and his "associates."

During the November 4, 2010, hearing, Kramer identified several points on which Kent's August, 2010, declaration conflicted with Kent's earlier, September, 2006, investigative testimony. Accordingly, the parties were ordered in accord with Rule 56(e), Federal Rules of Civil Procedure, to depose Kent.[2] After providing Kent with a

---

[2] FED. R. CIV. P. 56(e) ("The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.").

- 9 -

definition of "personal knowledge,"[3] Kramer questioned Kent about Kent's September, 2006, testimony. Kent confirmed (Doc. 157-1) the veracity and basis in personal knowledge of each statement in the September, 2006, testimony (1) that Kent met Kramer once and spoke with Kramer on the phone "a couple of times"; (2) that Kent possessed no knowledge of Kramer's "do[ing] anything for SkyWay"; (3) that Kent lacked any familiarity with Kramer's "associates," including Seymour Cohen, Barry Krohn, Gary Johnson, and Alan Katz; and (4) that Kent lacked knowledge of an "arrangement where people would find purchasers of SkyWay securities and be compensated ten percent of the shares that they were able to sell." Kent agreed that his August, 2010, declaration was "somewhat contrary to" his September, 2006, testimony. Additionally, Kent deposed (Doc. 157-1) that the information contained in Kent's August, 2010, declaration was not based on Kent's personal knowledge but on statements Kramer heard from third parties in the four years after Kent's 2006 testimony. Furthermore, Kent deposed that, as to each attachment to the August, 2010, declaration, Kent neither received nor reviewed the attachment before signing the declaration, even though the declaration incorporates by reference each attachment.

Under Rule 56(e), "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In this instance, Kent admittedly lacks

---

[3] Kramer read to Kent the definition of personal knowledge contained in Section 602 of Wright & Miller's "Federal Practice and Procedure," which states that personal knowledge "is simply that awareness of objects or events that begins with sensory perception of them. This awareness is comprised of four parts: (1) sensory perception, (2) comprehension of perception, (3) present recollection of what was perceived, and (4) ability to accurately testify at trial as to what was perceived." (Doc. 157-1); 27 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 6023 (2d ed.).

personal knowledge of the facts contained in the August, 2010, declaration. Accordingly, because Kent's declaration (Docs. 92-26, 110-8) fails to conform with Rule 56(e), the Commission cannot offer Kent's declaration as evidence against Kramer.

Conclusion

Accordingly, the motions (Docs. 89 and 94) for summary judgment are **DENIED**, and the declaration of James Kent (Docs. 92-26, 110-8) is **STRICKEN**.  Kramer's motion (Doc. 134) to amend the pre-trial order (Doc. 132) is **GRANTED IN PART**, and the pre-trial order is **AMENDED** (1) to note Kramer's objection to the Commission's calling Torres as a witness and (2) to identify Kramer's objection to Magistrate Judge McCoun's order (Doc. 66) as a pending matter for resolution.  The Commission's Daubert motion (Doc. 126) to exclude Bloom's testimony is **DENIED**.  Kramer's "motion/request for information" about the trial calendar (Doc. 165) is **DENIED AS MOOT**.  After a conference with the parties and by subsequent order, this matter will be set for trial.

ORDERED in Tampa, Florida, on December 6, 2010.

_____<br>
STEVEN D. MERRYDAY<br>
UNITED STATES DISTRICT JUDGE