UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.                                                          CASE NO. 8:09-cv-455-T-23TBM

SKY WAY GLOBAL LLC, et al.,

Defendants.
_____/

MR. KRAMER'S
MOTION FOR JUDGMENT ON PARTIAL FINDINGS,
DIRECTED VERDICT, INVOLUNTARY DISMISSAL, AND/OR
JUDGMENT AS A MATTER OF LAW
AND
INCORPORATED MEMORANDUM OF LAW

Defendant Kenneth Kramer ("Mr. Kramer"), by and through his undersigned counsel, pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6), 50, 52(c), 56(e), and/or the inherent powers of the Court, hereby files his Motion for Judgment on Partial Findings, Directed Verdict, Involuntary Dismissal, and/or Judgment as a Matter of Law, and states the following:

1.  **Plaintiff has failed to prove its prima facie case** by a preponderance of the admissible evidence presented during its case-in-chief.

2.  Thus, **Plaintiff has totally failed to prove its sole claim** against Mr. Kramer, the false allegation that he violated the broker-dealer registration provisions of Section 15(a)(1) of the Securities Exchange Act of 1934, as amended, as a matter of fact and/or law.

1

3.  Accordingly, judgment should, now, be entered against Plaintiff, and in favor of Mr. Kramer, dismissing, with prejudice, Plaintiff's sole claim against him (an alleged violation of Section 15(a)(1) of the Securities Act of 1934, as amended), as well as all of its claims for statutory-based, equitable relief.

## Memorandum of Law

### A. Plaintiff's Burden to Produce Admissible Evidence to Support Its Claim

***Plaintiff's inability to present any direct, admissible evidence*** in support of its sole claim against, and the relief requested from Mr. Kramer, ***entitles Mr. Kramer to a judgment of dismissal, with prejudice, as a matter of law.*** Such a result is both contemplated, and ***required*** by, inter alia, ***Rule 12(b)(6),***[1] ***Rule 50,***[2] ***Rule 52(c), Rule 56(e)***, Fed. R. Civ. P., and/or the inherent powers of the Court.[3]

---

[1]  As a starting point, ***Rule 12(b)(6) specifically addresses the defense of "failure to state a claim upon which relief can be granted,"*** which Mr. Kramer specifically raised and pled as his First Affirmative Defense (and further addressed, and emphasized, through his other twelve affirmative defenses) (Doc. 6, at 17-22). Plaintiff's inability at trial to prove its case-in-chief, in order to prove any entitlement to its requested relief, demonstrates the validity of Mr. Kramer's affirmative defense, as a matter of fact and law.

[2]  Rule ***50 specifically permits District Courts to grant judgment as a matter of law***, once a party has been fully heard on an issue during the trial, and the court finds that the party does not have a sufficient evidentiary basis to sustain its claim or defense; however, Rule 50 pertains to jury trials, only. Nevertheless, it is often invoked by, and actually granted in favor of defendants in bench trials, at the conclusion of the plaintiff's case-in-chief. See, e.g., Johnson v. Wyant, 362 Fed.Appx. 956, 957-58, 2010 WL 274320, at *1-2 (11th Cir., Jan. 26, 2010) (affirming magistrate judge's directed verdict in favor of defendant at conclusion of bench trial, even though Rule 50 did not apply, based upon plaintiff's failure to establish a violation of her rights under § 1983, and the failure to present any direct evidence at trial of sexual discrimination, ***instead of only inferences***).

[3]  Other district courts have chosen to construe Rule 50 motions that are raised during bench trials as either ***motions for judgment on partial findings, pursuant to Rule 52(c)***, see, .e.g., Olson v. Star Lift Inc., 709 F.Supp.2d 1351 (S.D. Fla. 2010) (finding for defendants and against plaintiff regarding claims for overtime, pursuant to FLSA), or ***motions for involuntary dismissal***, see, e.g., Brew v. Sch. Bd. of Orange County, 626 F.Supp. 709, 710-11 (M.D. Fla. 1985) (entering findings of fact and conclusions of law, following plaintiff's case and argument, after treating motion for directed verdict as a motion for involuntary dismissal).

2

Regardless of the various, inconsistent approaches, the substantive results are, in any event, the same, and are actually addressed by Fed. R. Civ. P. 52(c), which expressly states:

> **Judgment on Partial Findings.** *If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.* The court may, however, decline to render any judgment until the close of the evidence. *A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).* (Emphasis added)

Thus, **if this Court finds that Plaintiff has failed to prove <u>any required element</u> of its sole claim against Mr. Kramer**, based upon the preponderance of admissible evidence, particularly in light of Plaintiff's examination of Mr. Kramer during its case-in-chief, the Court may enter judgment against Plaintiff, and in favor of Mr. Kramer, supported by Rule 52(c) findings and conclusions.

In the event that this occurs, Mr. Kramer notes that he previously filed, and provided the Court with a courtesy copy of his **proposed Findings of Fact and Conclusions of Law on November 1, 2010 (Doc. 147, 147-1)**. To the extent that the Court directs Mr. Kramer to supplement his prior submission, to more specifically and/or accurately reflect the actual events that took place during the bench trial, Mr. Kramer would be more than happy to do so.[4]

---

[4] Curiously, Mr. Kramer's undersigned counsel never received any proposed Findings of Fact and Conclusions of Law by Plaintiff -- **until 5:02 PM on Friday, January 14, 2011, the eve of trial (Doc. 186)** -- even though it was <u>*required*</u> to do so two (2) months ago, five (5) days prior to the original, much less continued date(s) in which the trial term was set to commence (originally November 1, 2010), pursuant to the Court's November 16, 2009 Case Management and Scheduling Order (Doc. 38, at 2-3). This violation of the Court's Order, above, is sufficient to dismiss all of Plaintiff's claims. See Rule 16(f)(1)(C).

**B. Elements and/or Criteria Necessary to Prove Plaintiff's Sole Claim Against Mr. Kramer, the Purported Violation of <u>Section 15(a)(1) of the Exchange Act</u>**

The Commission's *sole cause of action against Mr. Kramer (Count VII) alleges that he violated the broker-dealer registration provisions* contained in Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1), which specifically provides:

> (a) **Registration of all persons utilizing exchange facilities to effect transactions**; exemptions
>
> (1) It shall be *unlawful for any broker or dealer which is* either a person other than a natural person or **a natural person not associated with a broker or dealer** which is a person other than a natural person (other than such a broker or dealer **whose business** is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce **to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security** (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) *unless such broker or dealer is registered* in accordance with subsection (b) of this section. (Emphasis added)

The language of this section could be set forth more clearly. However, for a natural person to violate this registration requirement, *he/she must "effect transactions in, or induce or attempt to induce the purchase or sale" of securities, as a business*.

The foregoing requires "all brokers and dealers" to register with the Commission, before using the mails or any means or instrumentality of interstate commerce to effect any transactions in securities for the accounts of others. <u>Id.</u> There appears to be no dispute that the SkyWay shares at issue were, in fact, securities, as defined by the Exchange Act; that Mr. Kramer's conduct involved the

4

use of instrumentalities of interstate commerce, through faxes and email activity; and/or that Mr. Kramer was never registered with the Commission, which he has readily acknowledged and/or stipulated. Rather, **the sole legal issue for determination** in this action with respect to Mr. Kramer **is whether he acted as an un-registered broker, in violation of Section 15(a)(1) of the Exchange Act.**

Section 3(a)(4)(A) of the Exchange Act defines "broker" as a person **"engaged in the <u>business</u> <u>of</u> <u>effectuating</u> <u>transactions</u> in securities <u>for</u> <u>the</u> <u>account</u> <u>of</u> <u>others</u>."** 15 U.S.C. § 78c(a)(4) (Emphasis added).

Section 15(a)(1) of the Exchange Act is a seldom litigated provision, and there is very little case law, actually analyzing and addressing its violation. The Commission has been unable to identify any judicial interpretation, directly, relating to its specific allegations against Mr. Kramer, or his conduct which is at issue here, in order to support Plaintiff's assertion that Mr. Kramer's conduct violated Section 15(a)(1) of the Exchange Act.

Accordingly, this Court must look to the various factors considered by the U.S. Courts in determining **whether a violation of Section 15(a)(1) actually occurred, during the operative time period**, which factors include, whether the defendant (in this case, Mr. Kramer) actually *engaged in a continuing business*, <u>and</u>:

(1) actively solicited investors;

(2) advised investors as to the merits of an investment;

(3) acted with a "certain regularity of participation in securities transactions;"

5

(4) received commissions or transaction-based remuneration;

(5) was an employee of the issuer;

(6) was selling, or previously sold, the securities of other issuers;

(7) was involved in negotiations between the issuer and the investor;

(8) analyzed the financial needs of an issue;

(9) recommended or designed financing methods;

(10) discussed the details of securities transactions; and

(11) made investment recommendations.

See, e.g., SEC v. Corporate Relations Group, Inc., No. 99-CV-1222, 2003 WL 25570113, at *17 (M.D. Fla. 2003) (citing In re Kemprowski & the Cambridge Consulting Co., Exchange Act Release No. 34-35058, 1994 WL 684628, at *2 (Dec. 8, 1994)); SEC v. U.S. Pension Trust, et al., Case No. 07-cv-22570-Martinez (S.D. Fla. Sept. 30, 2010); SEC v. Martino 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003); SEC v. Hansen, 1984 WL 2413, at *10 (S.D.N.Y. 1984); and SEC v. National Executive Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980).

Additionally, the SEC has issued various "No-Action" letters on behalf of the Commission, in response to various inquiries by individuals, entities, and/or their counsel, who have sought advisements as to whether or not the Staff would recommend that the Commission pursue an enforcement action under Section 15(a)(1) of the Exchange Act, in very specific factual circumstances. Because these "No-Action" letters are extremely fact-specific, and fall on both sides of this issue, they can provide some additional guidance, rather than controlling

precedent. Nevertheless, *it appears that the following criteria have previously persuaded the SEC Staff that Section 15(a)(1) has <u>not</u> been violated,* when the following criteria apply, and the defendant (in this case, Mr. Kramer) had:

- no access to, receipt of, or power to direct funds or securities of others;

- no involvement in opening, maintaining, administering, or closing accounts of others;

- no involvement in any way with the purchase or sale activities of execution, processing, facilitating, or closing of transactions;

- no involvement in matching orders or making decisions about routing orders;

- no involvement in answering questions, engaging in negotiations, or providing assistance to customers, or advising or commenting upon possible or proposed transactions;

- no involvement in the purchase or sale of, or otherwise providing investment advice with respect to any particular security;

- no involvement in screening counterparties for creditworthiness or arranging for or providing credit to purchasers in connection with securities transactions; and

- no involvement in making any recommendation to purchasers or prospective purchasers regarding participating broker-dealers.

<u>See</u>, <u>e.g.</u>, No-Action letters regarding: The Investment Archive, LLC, May 14, 2010; CommandTRADE, LP, December 28, 2005; and Attkisson, Carter & Akers, June 23, 1998. These, and other No-Action letters are available, for free, to the world-wide investing public at http://www.sec.gov/divisions/marketreg/mr-noaction.shtml).

In applying the admissible evidence presented by Plaintiff during its case-in-chief to the foregoing factors enunciated in the foregoing decisions, as well as

7

the criteria memorialized in prior No-Action letters issued by the SEC, it is abundantly clear that Plaintiff has failed to meet its burden of demonstrating that Mr. Kramer "acted as a broker," as defined by the Exchange Act, because he did <u>not *engage in "the business of effectuating transactions* in securities *for the account of others*,"</u> as a matter of law, respecting the sole claim asserted against him in this case.

With respect to the issue of "transaction-based compensation," which the Commission has asserted as its primary basis for asserting that Mr. Kramer violated Section 15(a)(1), we must state that the Commission's assertions are misguided, at best, and simply wrong. The admissible evidence demonstrates that Mr. Kramer received shares, periodically, from Mr. Baker, for conducting market research activities at his request, which consisted of reporting (after-the-fact) open-market purchases of SkyWay common stock through the purchaser's own, independent, registered broker/dealer firms (and it was those firms that made the transaction-based compensation in the form of the commission they charged their customers for them to "effect" those open-market purchase transactions). Thus, <u>whether</u> the Court deems it appropriate to conclude that the stock payments to Mr. Kramer, from Baker (not SkyWay) <u>were</u> transaction-based, or <u>not</u>, the evidence is clear that such compensation <u>did not result from</u> Mr. Kramer's conduct of a general securities brokerage business.

Weighing the foregoing factors and admissible evidence, it is clear that Mr. Kramer's actual conduct does <u>not</u> fall within the statutory framework that constitutes the four corners of Plaintiff's sole cause of action against him, and

that Plaintiff has failed to demonstrate, even by a preponderance of the admissible evidence, that Mr. Kramer actually violated Section 15(a)(1) of the Exchange Act, or engaged in any business, at all, as a broker or otherwise, as a matter of fact and law.[5]

---

[5]   Although mindful that the SEC's interpretation of the Federal Securities laws is often given considerable weight, this Court should conclude, as many other Federal Courts have been required to do, that the Commission has, in this instance, misinterpreted and/or misapplied Sections 3(a)(4)(A) and 15(a)(1) of the Exchange Act, by seeking to broaden the meaning of these particular statutes, or to obtain broader relief, than what was specifically intended by Congress. Thus, this Court should be cognizant of, and follow the wisdom and guidance of the Supreme Court in Aaron v. SEC, 446 U.S. 680, 695, 100 S. Ct. 1945, 1955 (1980), which explained:

> [T]he Court has also noted that "generalized references to the 'remedial purposes'" of the securities laws "will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" (Citations omitted)

Similarly, Meason v. Bank of Miami, 652 F.2d 542, 548 n.12 (5th Cir. 1981) provides further guidance:

> **On a number of occasions in recent years this Court has found it necessary to reject the SEC's interpretation of various provisions of the Securities Acts.** See SEC v. Sloan, 436 U.S. 103, 117-119, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978); Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 41 n.27 (97 S.Ct.926, 949 n.27, 51 L.Ed.2d 124) (1977); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 212-14 (96 S.Ct. 1375, 1390-1391, 47 L.Ed.2d 668) (1976); Forman, 421 U.S. at 858 n.25 (95 S.Ct. at 2063 n.25). (Emphasis added)

See also Sloan, 436 U.S. at 117, 98 S.Ct. at 1711 (while great deference is given to the SEC's interpretation of a statute, "as a general principal of law, it is not an argument of sufficient force in this case to overcome the clear contrary indications of the statute itself.") In accordance with the foregoing, and as the "final authority" on issues of statutory construction, this Court is "not obliged to stand aside and rubberstamp" the Commission's actions, which are "inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Id. at 118, 1712.

Attached for the Court's guidance, in furtherance of the foregoing, is the recent Findings of Fact and Conclusions of Law entered by District Court Judge Linnea Johnson in SEC v. Zacharia, Case No. 08-60698-CIV-MARRA/JOHNSON, entered on December 20, 2010, in which the Court found that the SEC (and its Miami Regional Office Trial Counsel) totally failed to carry its burden of proof on any of its claims against the defendants, necessary to prove the alleged insider trading claims, following its formal investigation, litigation, and twelve (12) days of a bench trial. The District Court further noted, inter alia, that **the SEC failed to introduce no direct evidence** necessary to sustain its burden of proof. See Exhibit A. Also attached, as Exhibit B hereto, is an informative article, dated May 9, 2008, from the 40th Annual Rocky Mountain Securities Conference, authored by Holme Roberts & Owen LLP, titled, "An Examination of the SEC's Efforts to Charge Peripheral Players with Securities Fraud," which also illustrates **other actions and provides a sampling over** the past ten (10) years, **in which the SEC failed to obtain favorable results**.

9

The uncontested, admissible evidence indicates that Mr. Kramer had no contract with SkyWay. Rather, Mr. Baker had a contract with SkyWay that paid him stock and other forms of compensation. As a result, Mr. Baker had several million shares of SkyWay common stock. Separately, Mr. Baker orally promised Mr. Kramer and others that he would pay them SkyWay shares of stock in return for reporting open-market purchases of SkyWay stock to him, by including the shareholder's name, the number of shares purchased, and the name of the purchaser's SEC-registered stockbrokerage firm, through which the shares were purchased on the open-market. The evidence demonstrates Mr. Kramer told eight (8) of his oldest, closest, personal friends about SkyWay (Messrs. Steinig, Johnson, Rohatinsky, Morris, Cohen, Krohn, Herko, and Katz), as well as his adult son, his internal medicine doctor (Dr. Sklaver) and his civil attorney (Denowitz, Esq.). Each of these individuals purchased some amount of SkyWay common stock. In addition, Messrs. Cohen and Krohn told a few other non-family members, who also purchased some of the stock of SkyWay. The SEC alleges that these activities required Mr. Kramer to have registered as a broker-dealer with the SEC.

Separately, the SEC asserts that the payment to Mr. Kramer of approximately $189,000 to $201,000, as a "finder's fee" for introducing Mr. Talib to Mr. Baker, who introduced him to SkyWay, also amounted to alleged unregistered broker-dealer activity. The totality of the admissible evidence, however, clearly demonstrates that Mr. Kramer's sole activity in this regard was to introduce Mr. Talib, an SEC-registered stockbroker at Morgan Stanley, to

10

Baker, and that Mr. Kramer had absolutely no involvement in, or direct nowledge of Mr. Talib/Morgan Stanley's solicitation of approximately twenty-two (22) largely-Arab individuals and entities, who purchased 27,712,189 shares for approximately $14,000,000.00, in direct purchase/sales transactions directly with SkyWay. With respect to this item, Mr. Kramer was paid a lawful "finder's fee," and the receipt of it did not require Mr. Kramer to register with the SEC as a broker-dealer.

With respect to the previously discussed transactions by eight (8) of Mr. Kramer's closest, personal friends, his adult son, his physician, and his attorney, the SEC alleges that Mr. Kramer violated the Section 15(a)(1) Broker-Dealer registration provision, because:

1. Mr. Kramer received "transaction-based compensation;"
2. "Actively solicited investors;"
3. "Advised investors about SkyWay;"
4. "Regularly participated at key points in the chain;"
5. "Promoted other stocks;" and
6. "Was not an employee of SkyWay."

The totality of the admissible evidence demonstrates, however, that Mr. Kramer was *not* engaged in any form of regular business activity to effectuate transactions in securities for the accounts of others, and that his communications with this very small group of close, personal friends and family in no way amounts to the type of conduct requiring registration with the SEC as a broker-dealer. In addition, the Court is persuaded that, the process of discussing one's

SACHER, ZELMAN, HARTMAN, PAUL, BEILEY & ROLNICK, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

personal views about the stock market, or particular companies, with one's closest, personal friends and family is also protected speech, under the First Amendment to the Constitution of the United States. Further, while the Commission points to the fact that Mr. Kramer made some several hundred thousand dollars of alleged profit on his purchases and sales of SkyWay common stock, the totality of the facts and circumstances surrounding these transactions and events do not in any way run afoul of the broker-dealer registration provisions of Section 15(a)(1) of the Securities Exchange Act.

At best, the Commission suggests that its view of largely documentary evidence, which it contends suggests "sales activities," simply does not demonstrate, much less prove, any violation of the referenced registration violation asserted against Mr. Kramer. If such were otherwise, then most anyone, and potentially everyone, who discusses "the stock market," and "particular company attributes," with close friends and relatives (who wind up independently purchasing shares in any such companies), would run afoul of the broker-dealer registration provisions -- and that is not the conduct that the referenced statute prohibits, or which it was ever intended to prohibit.

WHEREFORE, Mr. Kramer most respectfully demands entry of Judgment on Partial Findings against Plaintiff, as a matter of fact and law, and the dismissal of the sole claim and requested relief against Mr. Kramer, with prejudice; and that the Court retain jurisdiction over this action for further, additional, and necessary

SACHER, ZELMAN, HARTMAN, PAUL, BEILEY & ROLNICK, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 - (305) 371-8797

hearings and/or rulings on Mr. Kramer's long-standing requests for sanctions and related monetary relief.[6/]

Respectfully submitted this 25th day of January, 2011.

/s/ Barton S. Sacher, P.A.
**BARTON S. SACHER, P.A.**
Florida Bar No. 0691313
**JOSEPH A. SACHER, ESQ.**
Florida Bar No. 0174920
**SACHER, ZELMAN, HARTMAN, PAUL, BEILEY & ROLNICK, P.A.**
1401 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 371-8797
Telefacsimile: (305) 374-2605
Email: bsacher@sacherzelman.com
       jsacher@sacherzelman.com
**Counsel for Defendant**
**Kenneth R. Kramer**

---

[6/] Mr. Kramer has consistently maintained that he did not violate Section 15(a)(1) of the Exchange Act, and that the Commission had sufficient evidence in its possession (since 2006) demonstrating that lack of a violation, prior to suing Mr. Kramer and falsely asserting that claim against him, knowing full well that Mr. Kramer was a severely ill, partially disabled, retiree of limited means. As repeatedly demonstrated, there is absolutely no basis at all for any form of injunctive relief, disgorgement, civil fines and monetary penalties, or a so-called "penny stock bar." Accordingly, Mr. Kramer has previously given notice of his reservation and intent to seek recompense, including attorneys' fees and costs, against the Commission, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2009), or otherwise, including a Florida claim for malicious prosecution, among others (See Doc. 89, at 31 n.13), and he continues to do so, particularly in light of the additional evidence recently uncovered during CPA Torres' deposition, following the prior revelations that resulted from Mr. Kent's Court-Ordered deposition.

    In addition to, and not limited to the foregoing, Mr. Kramer is entitled to appropriate monetary sanctions against Plaintiff for its pervasive discovery abuses and related sanctionable conduct, which have resulted in unnecessary, vexatious litigation, pursuant to Rules 26(g) and 37(c), as well as 28 U.S.C. § 2412, and the inherent powers of this Court. These matters will be addressed in a forthcoming Motion for Monetary Sanctions after Trial.

13

SACHER, ZELMAN, HARTMAN, PAUL, BEILEY & ROLNICK, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court and served on counsel of record via hand-delivery on the 25th day of January, 2011:

Amie Riggle Berlin, Esq.
Drew Panahi, Esq.
James M. Carlson, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
berlina@sec.gov
**Counsel for Plaintiff**

A courtesy copy was also provided to:

Leonard Bloom, Esq.
Akerman Senterfitt LLP
One Southeast Third Avenue, 25th Floor
Miami, FL 33131

/s/ Joseph A. Sacher, Esq.
One of Counsel for Defendant,
Kenneth R. Kramer

SACHER, ZELMAN, HARTMAN, PAUL, BEILEY & ROLNICK, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797